**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| FREDERICK D. THOMAS, ) | |
| ) | No. 18 CV 50140 |
| *Plaintiff*, ) | Magistrate Judge Iain D. Johnston |
| ) | |
| v. ) | |
| ) | |
| ARAMARK INC., ET AL., ) | |
| ) | |
| *Defendants*. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Frederick D. Thomas alleges that defendants were deliberately indifferent to his diabetic condition and refused to give him medically appropriate meals while housed at the Winnebago County Jail, causing other diabetes-related medical symptoms. *See* 42 U.S.C. 1983. In response, defendants assert the affirmative defense of failure to exhaust administrative remedies. On March 3, 2020, the Court conducted a hearing under *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). For the reasons set forth below, the Court finds that the defendants have not met their burden to prove that plaintiff failed to exhaust his administrative remedies.

**I. BACKGROUND**

While detained at the Winnebago County Jail, plaintiff filed a medical grievance on April 4, 2018, complaining that the white bread and potatoes he was receiving for meals was causing high blood sugar test results. Plaintiff filed two more medical grievances making substantially the same complaints on April 6 and 7 respectively, though these grievances clarified that the food he was being provided was not appropriate due to his diabetic condition and the diet was making it difficult for him to reduce his A1C level. He received the same response to these three grievances on April 8, 2018: that plaintiff was already on a carbohydrate-controlled diet, the medical department could not dictate what food the kitchen served him, and that he should message the kitchen if he had any concerns about his food. *See* Ex. 2 at 3-4.

In addition to his medical grievances, plaintiff filed a separate grievance to the food services department on April 7, 2018, complaining that the meals he was being provided at Winnebago County Jail were not proper for someone with his diabetic condition, were leading to abnormally high blood sugar and A1C test results, and were leading to pain relating to his diabetes. Ex. 2 at 3. The next day plaintiff received a response to his food services grievance explaining that he was already receiving an appropriate meal for diabetic inmates per jail policy and as dictated by the medical department, and he should address any pain related issues with the medical department. Following these instructions, plaintiff filed another request with the medical department on April 9, 2018, asking for a diabetes check due to his pain and high blood sugar

levels. *Id*. at 8. Plaintiff did not appeal any of these decisions and instead filed this lawsuit on April 30, 2018.

At the *Pavey* hearing the Court held on March 3, 2020, Justin Egler, a lieutenant employed by the Winnebago County Jail, testified that inmates are informed about the grievance process in three ways: (1) a video is shown at random times explaining the grievance process, (2) officers explain the process to the inmates themselves during the orientation process, and (3) the inmates are provided an inmate handbook that also describes the grievance process. According to that handbook, which was in effect from February 23, 2018 through June 2018, an inmate must first try to resolve their complaints informally with corrections staff. If the issue is left unresolved, the inmate must file a grievance no later than 5 days after the incident giving rise to the grievance using an electronic "cobra GT kiosk" that are available to the inmates in their housing units. The grievances must be filed under the appropriate tab (food service related, and medical related grievances have their own separate tabs). If inmates receives an unsatisfactory response, they must file an appeal within 72 hours of receiving the response. *See* Ex. 1 at 5. Importantly, Lieutenant Egler testified that he had no personal knowledge as to whether plaintiff was shown the grievance instructional video, had the grievance process explained to him, or was provided a copy of the inmate handbook. However, he confirmed that plaintiff had never appealed any of the responses to any of his grievances.

Plaintiff similarly testified at the hearing that he had never appealed any of the responses to any of his grievances. However, he also testified that he was never shown a video or otherwise instructed on how to appeal a grievance or informed that an appeal was a prerequisite to filing a lawsuit. Additionally, he testified that he had never been given a copy of the inmate handbook and that he would have appealed the responses to his grievances he found unsatisfactory had he known he had to do so before filing a lawsuit.

## II. ANALYSIS

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all administrative remedies available to them before they may have their claims heard in a federal court. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7thCir. 2008). To exhaust administrative remedies, a prisoner must comply with the procedures and deadlines set forth in the prison's policy. *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016). Exhaustion is a precondition to filing suit in federal court, thus an inmate may not exhaust his administrative remedies after filing. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). The Seventh Circuit employs a strict compliance approach to the exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). However, where the prison fails to inform a prisoner of the grievance procedure, the grievance procedure is rendered unavailable and the exhaustion requirement is inapplicable. *Hernandez*, 814 F.3d at 842-43. The defendants bear the burden of proving plaintiff failed to exhaust his administrative remedies. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013).

In this case, defendant argues that plaintiff never appealed his grievance responses, therefore he failed to exhaust the administrative remedies available to him as provided in the inmate handbook. Plaintiff argues that he was never told that he must appeal grievance

responses as a prerequisite to filing a lawsuit and was unaware of that requirement, thus the grievance procedure was rendered unavailable and the exhaustion requirement was therefore inapplicable to him. The Court finds plaintiff's argument persuasive. As discussed above, defendants presented evidence that there was a grievance procedure in place during the time plaintiff filed his grievances, and it is undisputed that plaintiff never appealed any of his grievances. However, aside from Lieutenant Egler's testimony that, in general, prison procedure from February through June 2018 dictated that inmates be instructed on the grievance procedure during their classification interviews and provided an inmate handbook describing that procedure, defendants presented no evidence that plaintiff himself was ever personally given this instruction, shown the video, or provided the handbook. In fact, Lieutenant Egler testified that he had no personal knowledge as to what plaintiff received. It does not necessarily follow that because inmates are supposed to be instructed on the grievance procedure and supplied an inmate handbook that plaintiff was instructed or supplied.[1]

Rather, plaintiff's testimony that he was never shown the video, personally instructed on the grievance procedure, or provided a copy of the inmate handbook, is credible and mostly unrebutted. Plaintiff's testimony is also supported by the nature of the responses he received from the medical and food services departments: neither of the responses he received informed him that he could (or must before filing a lawsuit) appeal. Instead, the medical and food services departments directed plaintiff to file complaints with the other, seemingly creating a grievance process for his alleged diabetic-related issues with no end point. It is no surprise that plaintiff also credibly testified that he felt that the prison was attempting to thwart his attempts at obtaining relief through the grievance process.

Regardless, plaintiff filed grievances regarding his allegedly improper diet (and the medical issues caused by it) with both departments. The food department directed him to lodge his complaint with the medical department, and the medical department directed him to the food services department, and plaintiff had already lodged essentially the same complaints with both departments. Even so, plaintiff followed the only direction he was given: after being told by the food services department to file a grievance with the medical department, plaintiff did so on April 9, 2018. Ex. 2 at 8. That plaintiff followed the instructions he was provided also supports plaintiff's testimony that he would have followed grievance appeal procedural instructions and filed an appeal had he known he was required to do so before filing a lawsuit.

Ultimately, defendants have not presented sufficient evidence to prove that the prison informed plaintiff of its grievance procedures and have thus failed to meet their burden to prove that the grievance process was available to plaintiff. Therefore, the exhaustion requirement was rendered inapplicable to the plaintiff. *Hernandez*, 814 F.3d at 842-43.

---

[1] The Court notes from its experience that other correctional institutions avoid this issue of proof by requiring new inmates to receive instruction on the grievance process during orientation, providing them a handbook, and requiring them to sign a form acknowledging that they have received both. Additionally, the Court wonders why defendants presented no evidence indicating whether the handbook or an explanation of the grievance procedure is available on the Winnebago County Jail cobra GT kiosks themselves or whether inmates are required to electronically acknowledge review of the grievance procedures before filing any grievance using the kiosks.

## **III. CONCLUSION**

For those reasons, defendants' motion to dismiss for failure to exhaust is denied. A telephonic status is set for March 24, 2020 at 9:00 AM. By March 20, 2020, the parties shall provide direct-dial telephone numbers to the Court's operations specialist, who will initiate the call.

Date: March 9, 2020						By: _____
							Iain D. Johnston
							United States Magistrate Judge